UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

JOHN P. MCSHEFFREY,

Plaintiff,

v.                                                                    Action No. 2:21cv630

LILY I. WILDER, *in her individual
and official capacities*, et al.,

Defendants.

## UNITED STATES MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

This matter is before the Court on the motions to dismiss plaintiff John P. McSheffrey's

third amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), filed by defendants

Lily Wilder, Ryan Davis, Kimberly Wood, and Brent Johnson. These motions were referred to

the undersigned. ECF No. 184. For the following reasons, the Court **RECOMMENDS** that the

motions to dismiss filed by Ryan Davis, Kimberly Wood, and Brent Johnson, ECF Nos. 146, 151,

156, be **GRANTED**, and the motion to dismiss filed by Lily Wilder, ECF No. 148, be **GRANTED**

**in part and DENIED in part**.

### I.      PROCEDURAL HISTORY

On November 24, 2021, McSheffrey filed his first complaint against Ryan Davis  with the

City of Norfolk Police Department, and Assistant Commonwealth's Attorney Lily I. Wilder, in

both their individual and official capacities, in relation to McSheffrey's criminal prosecution in

the Circuit Court for the City of Norfolk. ECF No. 1. McSheffrey filed an amended complaint on

March 21, 2022, alleging violations of the First, Fourth, and Fourteenth Amendments, Virginia

Code § 19.2-217, and defamation. ECF No. 38, at 2, 6. McSheffrey brought his amended complaint pursuant to 42 U.S.C. § 1983, the Declaratory Judgment Act, and the Federal Tort Claims Act seeking an injunction, a declaratory judgment, and compensatory and punitive damages. *Id.* at 2, 7–8.

Davis filed a motion to dismiss McSheffrey's amended complaint, which the Court granted in part and denied in part on May 22, 2023. ECF No. 132. The Court granted the motion to dismiss claims brought against Davis in his official capacity; claims alleging Davis is liable to McSheffrey as a result of committing perjury before the grand jury; certain section 1983 claims raised pursuant to the First Amendment, Fourteenth Amendment, and Virginia Code § 19.2-217; and claims brought pursuant to the Federal Tort Claims Act. *Id.* at 14. The Court granted McSheffrey leave to amend his section 1983 claim for malicious prosecution under the Fourth Amendment. *Id.*

In his third amended complaint, filed on July 14, 2023, McSheffrey added two new defendants, Kimberly Wood, a paralegal, and grand jury and misdemeanor appeals coordinator with the City of Norfolk, and Brent Johnson, the former Chief Deputy for the Commonwealth's Attorney's Office for the City of Norfolk. ECF No. 143. McSheffrey alleges the four defendants conspired to unlawfully arrest, falsely imprison, and maliciously prosecute him in violation of his Fourth Amendment rights. *Id.* at 2. McSheffrey seeks compensatory, punitive, and nominal damages, as well as declaratory relief under 42 U.S.C. § 1983. *Id.* at 2, 20.

The four defendants moved to dismiss the third amended complaint for failure to state a claim pursuant to Rule 12(b)(6). ECF Nos. 146, 148, 151, 156. McSheffrey filed oppositions to the motions and Davis replied. ECF Nos. 164–65, 167–68, 174. After review of the parties' submissions, the Court concludes that a hearing is unnecessary, and this matter is ready for a decision. *See* Local Civ. R. 7(J).

## II.    FACTUAL BACKGROUND[1]

On July 12, 2020, Jane Doe made a statement to Detective Siegel with the Norfolk police claiming that McSheffrey had sexually assaulted and raped her.  Compl. ¶ 8; ECF No. 143-1, at 2–6.   On July 22, 2020, Detective Siegel emailed defendant Wilder, with the Norfolk Commonwealth's Attorney's Office, a police report regarding his investigation.  Compl. ¶¶ 4, 9; ECF No. 143-1, at 2–16.   Detective Siegel included a recording of his interview of Jane Doe, McSheffrey's criminal history, McSheffrey's written statement, and screenshots McSheffrey provided of text messages with Jane Doe.  Compl. ¶ 9; ECF No. 143-1, at 2–16.  McSheffrey explains that Jane Doe consented to have intercourse with him after he paid her and that she was working with the police to entrap him for statutory rape.  Compl. ¶ 9 n.1; ECF No. 143-1, at 7–16.

Wilder attempted unsuccessfully to set up a meeting with Jane Doe in August, October and November 2020.  Compl. ¶ 10.  Wilder met with Jane Doe's mother, Ms. Turner, on November 16, 2020.  *Id.* ¶ 12.  Ms. Turner told Wilder that McSheffrey raped Jane Doe.  *Id.*  Ms. Turner also told Wilder she attempted, but was unable to speak with Detective Seigel the day the rape occurred because he was off duty, and the police department informed Ms. Turner that, because her daughter was 16 years old and doing drugs with McSheffrey, the sexual encounter was consensual.  *Id.*  Ms. Turner further advised Wilder that Jane Doe was friends with people McSheffrey was evicting due to their relationship with Jane Doe.  *Id.* ¶¶ 10 n.2, 12; ECF No. 143-2 .

Wilder emailed a Sergeant with the Norfolk police department on November 16, 2020, stating:

---

[1] The facts detailed below are set forth in the third amended complaint and attachments to the complaint, and are accepted as true for purposes of ruling on this motion. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  Except for the police investigation report (ECF No. 143-1, at 2–6) and the indictment (ECF No. 143-14), McSheffrey has incorporated the contents of the attachments into his factual allegations.  Compl. ¶¶ 10 n.2, 13–14, 20–27, 30–33, 37–41, 56–57. *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 167 (4th Cir. 2016).

Today I met with a woman named [] she is the mother of a victim of a rape []. This is currently a DI that I am reviewing for Detective Seigel. The victim knew Detective Seigel prior to this incident due to another situation where she was potentially a victim. When the victim was raped by Mr. McSheffrey she told her mom the same day. According to her mother, the mother tried to call Detective Seigel the same day but he was not at work that day. (I believe the date would have been March 24th or sometime around there.) Mom says that she spoke with another detective, it was a male detective. She does not remember the name. Mom says that she explained the situation, that her daughter met up with a 53 year old, he gave her alcohol and weed and then he came onto her and she was raped. The detective informed her that due to the fact that she was 16 and was doing drugs with him it was consensual. She was paraphrasing because English is not her first language and she says she does not remember word for word what was said but that was the gist of it.

I am emailing you to find out if there is any chance that you would know or any of your team remembers speaking to a lady in March. I do not see an incident report in OnCall, however, I figured it would not hurt to ask and see if there is some more information that might be out there because I would need it to prosecute.

Seigel, to mine and your surprise, I do think I will bring rape charge!

Compl. ¶ 13; ECF No. 143-3, at 2.

The email was forwarded to several officers, and defendant Davis with the Norfolk Police Department responded to the email, "that doesn't sound like a response any one of us in this email would have given." Compl. ¶¶ 5, 14; ECF No. 143-3 at 3. Wilder attempted to meet with Ms. Turner in person in late November, but no meeting occurred. Compl. ¶¶ 16–17.

Davis advised Wilder that he would be at the grand jury on January 6, 2021[2], to testify as a witness in unrelated cases, and that "he could present her case if she wanted him to[], and he would state whatever she wanted him to state." *Id.* ¶ 18.

---

[2] The third amended complaint discusses a grand jury meeting on January 6, **2020**, and January 6, **2021**. Compl. ¶¶ 18, 34, 72. Read in context with the remaining factual allegations, it appears January 6, 2021, is the correct date and the reference to 2020 is a typographical error.

4

Wilder contacted her supervisor, defendant Johnson, on December 17, 2020, and "thoroughly went over the case evidence." *Id.* ¶¶ 7, 19. Johnson emailed Wilder the same day stating,

> I reluctantly approved your DI review for indictment. I am sure you realize you have very little chance of success in this case. Please, pre-trial, meet with Krista and go over every angle. I have see[n] Krista make magic before.

*Id.* ¶ 21; ECF No. 143-5, at 2. Wilder responded to the email on December 18, 2020,

> I hate to admit this but when I scheduled my first meeting with the victim, I had practically made up my mind that I was NOT going to charge this man . . . However, [Jane Doe] truly is very credible and I truly believe that she was raped. I left the meeting with a gut feeling knowing that I had to convince my supervisors to let me charge this man. So thank you for trusting my judgement. I have talked to Krista about this case and will continue to seek her advice as the trial process continues. I also have spoken with the victim and her mom in GREAT lengths that this will not be an easy case to prove and that there is a good chance that we will lose however, they are both willing and wanting to fight.

Compl. ¶ 22; ECF No. 143-5.

On December 21, 2020, defendant Wood, a paralegal, and grand jury and misdemeanor appeals coordinator with the City of Norfolk, emailed Wilder,

> this file is going to the January 6th Grand Jury. I just checked PBK and there is no language for this charge. Please create language, have your deputy approve it and send it to either me or Kia to put into PBK.

Compl. ¶¶ 6, 23; ECF No. 143-6, at 2. Wood sent a follow-up email on December 29, 2020,

> if you want this case to go to the 1/6 Grand Jury, I need the language to upload into PBK. All Indictments are due to the Court by 3 pm today.

Compl. ¶ 24; ECF No. 143-7, at 2.

At 9:04 a.m. on December 29, 2020, Wilder emailed Deputy Commonwealth's Attorney Krista Fulton a copy of the direct indictment for McSheffrey for "Rape" pursuant to Va. Code § 18.2-61, stating, "[a]ttached is the indictment language for this rape by force charge. Please let me know if you approve it or want me to change something?" Compl. ¶ 25; ECF No. 143-8, at 2.

Ms. Fulton responded at 9:53 a.m. with suggested changes, and Wilder amended the language. Compl. ¶¶ 26–27; ECF No. 143-9, at 2. Wilder forwarded the amended language to Wood at 10:27 a.m. Compl. ¶ 27; ECF No. 143-10, at 2.

"On December 29, 2020 at or about 10:45 am . . . Wood informed [Wilder] she could prepare the indictment and have it pushed through as if it went to the Grand Jury," and Wilder agreed to this. Compl. ¶ 28. Wilder called Davis the same day, and "Davis agreed to help Wilder out any way he could even if he had to make a false statement[]. Wilder explained that he would not have to testify because Defendant Wood was hand[l]ing pushing the direct indictment through." Compl. ¶ 29.

At 11:16 a.m., Wood emailed Wilder stating, "attached is the Indictment I created for your review and approval. Please look it over and if no corrections need to be made, click transfer to Court." Compl. ¶ 30; ECF No. 143-11, at 2. Wilder responded at 1:25 p.m., "[t]hank you, done!" Compl. ¶ 31; ECF No. 143-11, at 2.

Davis testified under oath before the grand jury that Jane Doe was McSheffrey's "spouse, that she was an adult, that the intercourse was by force or intimidation, and that Davis was the investigating officer," and the grand jury returned an indictment based on this false information. Compl. ¶¶ 35–36. Alternatively, "[o]n January 6, 2021, Defendant Wood was able to have the Direct Indictment signed without having Defendant Davis testify to anything before the Grand Jury." Compl. ¶ 34; *see* ECF No. 143-14, at 2.

The style of the indictment indicates it is for "Intercourse with Spouse by Force, Threat, etc." ECF No. 143-14, at 2. The body of the indictment states,

The Grand Jury charges that:

On or between March 17, 2020 and March 31, 2020, in the City of Norfolk, John Patrick McSheffrey feloniously did commit rape by having sexual intercourse with

6

[Jane Doe], when such act was accomplished against the victim's will, by force, threat or intimidation of or against the victim.

Va. Code § 18.2-61.

*Id.*

Based on this indictment, a capias was issued for McSheffrey's arrest, McSheffrey was arrested on January 12, 2021, and he was released on bond on January 20, 2021. *Id.* ¶¶ 37–38, 41. Wilder made several false statements at the bond hearing, including: (1) Ms. Turner "reported to the police the date the first incident occurred, and they refused to do anything"; (2) "Jane Doe's therapist got her to speak to a detective that brought the matter to the Commonwealth's office for direct indictment"; and (3) she knew for a fact that Jane Doe did not have another case pending with any military person. *Id.* ¶¶ 38–40.

After McSheffrey filed this civil action against Wilder, Paul Powers took over the prosecution of McSheffrey's criminal case. *Id.* ¶¶ 44–45. On February 27, 2023, the state court granted Powers' motion to *nolle prosequi* McSheffrey's case following Powers' statement, "we aren't able to find a witness, a former detective, who is a necessary witness at the time. We tried to serve him, contact him in every way possible. We don't believe we could get a conviction without him." *Id.* ¶¶ 56–57; ECF No. 143-17, at 4.

### III.    LEGAL STANDARD

When a complaint fails "to state a claim upon which relief can be granted," dismissal is proper. Fed. R. Civ. P. 12(b)(6). A complaint may be dismissed pursuant to the rule when it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff need not set forth detailed facts regarding his claims in the complaint, but his factual allegations must raise a right to relief above the level of speculation. *Id.* at 555.

A Rule 12(b)(6) motion to dismiss does not resolve factual disputes, and so a court "must accept as true all of the factual allegations contained in the complaint" and "draw all reasonable inferences in favor of the plaintiff." *Kensington Volunteer Fire Dep't v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012) (internal quotations omitted). While the alleged facts must be taken as true, courts are not bound by the "legal conclusions drawn from the facts" and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). Moreover, on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain,* 478 U.S. 265, 286 (1986). Importantly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must include 'more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'" *Johnson v. Am. Towers, LLC*, 781 F.3d 693, 709 (4th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678). It is insufficient for a plaintiff to "plead[ ] facts that are 'merely consistent with' a defendant's liability," the factual allegations must allow a "court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (emphasis added) (quoting *Twombly,* 550 U.S. at 570).

If a court, on a motion under Rule 12(b)(6), considers matters outside the pleadings, the motion is treated as one for summary judgment under Federal Rule of Civil Procedure 56. Fed. R. Civ. P. 12(d). However, "a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed," without converting the motion to dismiss to a motion for summary judgment. *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396–97 (4th Cir. 2006).

## IV.   DISCUSSION

Because a *pro se* plaintiff's pleadings should be liberally construed, the Court will interpret McSheffrey's third amended complaint to assert the following violations of his Fourth Amendment rights for purposes of the Rule 12(b)(6) motions:  (1) defendants conspired to procure a false indictment against McSheffrey by causing Davis to commit perjury before, and make false statements to, the grand jury; (2) alternatively, defendants conspired to fabricate a false indictment against McSheffrey without presenting testimony to the grand jury; (3) defendants acted in their official capacities pursuant to a custom or practice; (4) McSheffrey was arrested as a result of the false indictment; and (5) McSheffrey's criminal proceedings terminated when the state court granted the Commissioner's motion to *nolle prosequi*.

### A.    McSheffrey has failed to state a claim against the defendants in their official capacities.

In the third amended complaint, McSheffrey sues all four defendants in their individual and official capacities. Compl. ¶¶ 4–7. While "[p]ersonal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law," "[o]fficial-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (citations and quotations omitted).  To state a claim for official capacity liability, the plaintiff must identify some "policy or custom" followed by the defendant's employer that "played a part in the violation of federal law." *King v. Rubenstein*, 825 F.3d 206, 223 (4th Cir. 2016) (quoting *Graham*, 473 U.S. at 166).

According to the Fourth Circuit, an official policy or custom can arise in four ways:

(1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that manifest[s] deliberate

indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law.

*Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (alteration in original) (citation and internal quotation marks omitted) (quoting *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999)).

McSheffrey asserts that defendants took certain actions pursuant to a "custom or practice":

- By reasons of Defendant Wood[']s actions, she acted under the color of authority vested in her by the State of Virginia, did a custom or practice jointly and severally knowingly, intentionally, wantonly, and maliciously with Defendants Wilder and Davis to create a false indictment and/or "rubber stamped," i.e., without Grand Jury hearing evidence, which caused the unreasonable seizure;

- Defendant Wood was acting under a custom or practice of circumventing the Grand Jury procedure by drafting a bogus indictment for Wilder that was the proximate cause of the injuries to Plaintiff rights;

- Defendant Wood . . . deliberately circumvented the Grand Jury because it was a custom and pattern or practice that she normally took in cases where there was no probable cause to have Plaintiff arrested and taken to trial;

- It was Defendant Wilder actions and inactions was a custom or practice she deliberately performed to prepare these type cases;

- Johnson's actions were a custom or practice of intentionally, and maliciously, approving Wilder to prosecute the case against Plaintiff when probable cause did not exist was the custom and practice set out by the Attorney General. (ECF 56-10, p. 13)("Statewide, over 80% of those cases result in a nolle prosequi or dismissal").

Compl. ¶¶ 60, 62–63, 70, 80.

McSheffrey does not identify any express policy of the Norfolk Police Department or the Norfolk Commonwealth's Attorney's Office, or a decision by an official with final policymaking authority, that caused his seizure without probable cause. Nor does McSheffrey properly allege his unconstitutional seizure resulted from a failure to properly train or an omission or a practice that is so persistent and widespread as to constitute a custom with the force of law. *See Riddick v. Watson*, 503 F. Supp. 3d 399, 416 (E.D. Va. 2020).

McSheffrey alleges defendant Johnson deliberately failed to train Wilder as to how to prosecute cases, which caused McSheffrey's malicious prosecution. Compl. ¶ 81. McSheffrey also asserts the defendants had a "custom and practice" of circumventing the grand jury and falsifying indictments. *Id.* ¶¶ 60, 62–63, 66. These allegations are conclusory statements with no factual support. Further, aside from the allegation that this happened in his prosecution, McSheffrey does not identify any other prosecutions resulting from these practices.

McSheffrey next asserts that it is the custom and practice of the Attorney General to prosecute cases when there is no probable cause. Compl. ¶ 80. McSheffrey references an exhibit to a motion to amend the complaint that he filed in July 2022. *Id.*; ECF No. 56. The exhibit appears to be several internet articles from January and February 2022 about Virginia Attorney General Jason Miyares. ECF No. 56-10. McSheffrey's quote—"Statewide, over 80% of those cases result in a nolle prosequi or dismissal"—is from a comment to one of the articles. *Id.* at 10. It is unclear what, if anything, can be inferred from the comment, but it does not address arrests without probable cause.

McSheffrey's conclusion that failing to train Wilder, fabricating indictments, and arresting citizens without probable cause are the custom and policy of the Norfolk Police Department or Norfolk Commonwealth's Attorney's Office based on the allegations in his own case are insufficient to state a claim for official capacity liability. *See Spell v. McDaniel,* 824 F.2d 1380, 1391 (4th Cir.1987) ("proof of a single violation . . . cannot support an inference that the violation resulted from a municipally condoned custom of comparable practices"). McSheffrey's third amended complaint lacks factual allegations from which this Court could reasonably infer the existence of a longstanding custom of fabricating indictments and arresting citizens without

11

probable cause.  McSheffrey's claims against the four defendants in their official capacities should be **DISMISSED**.

**B.    Prosecutorial immunity applies to protect defendants Johnson and Wood from McSheffrey's claims for damages.**

The Supreme Court of the United States has held that "a prosecutor enjoys absolute immunity from § 1983 suits for damages when [she] acts within the scope of [her] prosecutorial duties" to include "initiating a prosecution and in presenting the State's case." *Imbler v. Pachtman*, 424 U.S. 409, 420, 431 (1976).  "[A]bsolute immunity safeguards the process, not the person," and applies to actions "intimately associated with the *judicial* phase of the criminal process." *Annappareddy v. Pascale*, 996 F.3d 120, 138 (4th Cir. 2021) (quoting *Imbler*, 424 U.S. at 430–31).  To determine whether specific actions are protected, courts employ a functional approach, distinguishing acts of advocacy from investigative tasks unrelated "to an advocate's preparation for the initiation of a prosecution or for judicial proceedings." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993) ("[w]hen a prosecutor performs the investigative functions normally performed by a detective or police officer," prosecutorial immunity does not apply).  While not dispositive, actions taken by a prosecutor prior to a probable cause determination are more likely investigative in nature, whereas actions taken after are more likely advocative or prosecutorial in nature. *Annappareddy*, 996 F.3d at 139 (holding absolute immunity applies to "the presentation of evidence . . . before a grand jury after a decision to seek an indictment is made").  "A prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested." *Buckley*, 509 U.S. at 274.

To protect the independent judgment of prosecutors, officials are absolutely immune from suit when "performing functions that require the exercise of prosecutorial discretion." *Kalina v. Fletcher*, 522 U.S. 118, 125 (1997).  "[T]he prosecutor's act in seeking an indictment is but the

first step in the process of seeking a conviction," "[t]hus, we shield the prosecutor seeking an indictment because any lesser immunity could impair the performance of a central actor in the judicial process." *Malley v. Briggs*, 475 U.S. 335, 343 (1986); *see Buckley*, 509 U.S. at 273 (holding actions entitled to the protections of absolute immunity include "the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made"); *Burns v. Reed*, 500 U.S. 478, 490 n.6 (1991) (noting "widespread agreement among the Courts of Appeals that prosecutors are absolutely immune from liability under § 1983 for their conduct before grand juries").

The Supreme Court recognizes that applying absolute prosecutorial immunity can "leave the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty," *Imbler*, 424 U.S. at 427, but "has concluded that important public policy justification[s] outweigh these harms." *Annappareddy*, 996 F.3d at 139 (citations and quotations omitted). "The public trust of the prosecutor's office would suffer if he were constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages. Such suits could be expected with some frequency, for a defendant often will transform his resentment at being prosecuted into the ascription of improper and malicious actions to the State's advocate." *Imbler*, 424 U.S. at 424–25; *see Kalina*, 522 U.S. at 127 ("absolute [prosecutorial] immunity . . . is not grounded in any special esteem for those who perform these functions, and certainly not from a desire to shield abuses of office, but because any lesser degree of immunity could impair the judicial process itself") (internal quotations and citations omitted).

As a result, the Fourth Circuit has ruled that prosecutors are entitled to absolute immunity for presenting false or perjured evidence. *See Carter v. Burch*, 34 F.3d 257, 263 (4th Cir. 1994) (holding prosecutor was entitled to absolute immunity where he was accused of conspiring to present false evidence); *Brown v. Daniel*, 230 F.3d 1351, at *2 (4th Cir. 2000) (table decision) (holding prosecutors were entitled to absolute immunity when the plaintiff alleged they used perjured testimony and maliciously prosecuted him). Courts have further held that prosecutors are entitled to immunity for presenting fake indictments. *Azeez v. Keller*, No. 5:06cv106, 2012 WL 3231323, at *7 (S.D.W. Va. Aug. 6, 2012), *aff'd*, 510 F. App'x 296 (4th Cir. 2013) (holding that, while "it is unethical for a prosecutor to file a 'fake' indictment," "a prosecutor is nevertheless absolutely immune from a Section 1983 claim for such action."); *see also Davidson v. United States*, No. CIV.A. 04-443 (EGS), 2005 WL 623228, at *1 (D.D.C. Mar. 17, 2005) (finding prosecutor absolutely immune from allegations that they filed a fake indictment); *Harris v. Rubin*, No. CIVA 09-4368 (SDW), 2010 WL 1380993, at *2 (D.N.J. Apr. 1, 2010) (finding prosecutor absolutely immune from allegations that they used a fake indictment number). The court in *Davidson* noted that plaintiff's case, asserting that the United States Attorney had filed a fake indictment, "presents the type of specious litigation the *Imbler* Court recognized in conferring immunity on prosecutors." 2005 WL 623228, at *2.

Lastly, taking a functional approach, courts have extended prosecutorial immunity to non-prosecutors who perform actions "intimately associated with the *judicial* phase of the criminal process." *Annappareddy*, 996 F.3d at 139 ("looking to the nature of the function performed and not the identity of the actor who performed it," to determine whether absolute immunity applies) (internal quotations and citations omitted); *see also Jean v. Collins*, 155 F.3d 701, 707 (4th Cir. 1998) (vacated on other grounds, 526 U.S. 1142 (1999) (holding law enforcement officers are

14

entitled to the same immunity as prosecutors when they perform identical functions); *Langworthy v. Dean*, 37 F. Supp. 2d 417, 421 (D. Md. 1999) (holding absolute immunity applied to the prosecutor, the prosecution management coordinator, and the prosecutor's legal assistant where plaintiff alleged failure to prosecute); *Hill v. City of New York*, 45 F.3d 653, 660 (2d Cir. 1995) ("Because absolute immunity is essential to safeguarding the integrity of the judicial process, it extends to those performing functions closely associated with that process," including a social worker and non-attorney employees of the district attorney's office).

### 1.      Brent Johnson, Norfolk Commonwealth's Attorney's Office

Brent Johnson, former Chief Deputy for the Commonwealth's Attorney's Office, is entitled to prosecutorial immunity.   McSheffrey offers the following factual allegations in the third amended complaint with respect to Johnson:

- Johnson was Wilder's supervisor at the Commonwealth's Attorney's Office, Compl. ¶ 19;

- Wilder thoroughly went through the case evidence against McSheffrey in a phone call with Johnson on or about December 17, 2020, *id.*; and,

- Johnson emailed Wilder at 5:11 p.m. on December 17, 2020, stating, " I reluctantly approved your DI review for indictment.  I am sure you realize you have very little chance of success in this case.  Please, pre-trial, meet with Krista and go over every angle.  I have see[n] Krista make magic before," *id.* ¶ 21, ECF No. 143-5 (email).

Based on these factual allegations, McSheffrey claims Johnson acted in concert with Wilder, Wood, and Davis to violate McSheffrey's Fourth Amendment rights when "he reluctantly approved Defendant Wilder to move forward with seeking a[n] indictment against Plaintiff when there was no evidence of rape or probable cause to make that decision," Compl. ¶¶ 77–78; and Johnson conspired with Wilder to deprive McSheffrey of his rights when he advised Wilder

"to meet with Krista Fulton to devise [a] plan to fabricate evidence [to] have Plaintiff unlawfully arrested," *id.* ¶ 79.[3]

The actions taken by Johnson—approving Wilder's request to seek a direct indictment against McSheffrey and asking Wilder to confer with another attorney in the office on the indictment—fall within the scope of his prosecutorial duties and are "intimately associated with the judicial phase of the criminal process." *Imbler*, 424 U.S. at 430–31 (holding prosecutors are absolutely immune from liability for the decision to prosecute). Johnson is thus entitled to prosecutorial immunity with respect to McSheffrey's suit for damages, and this portion of McSheffrey's third amended complaint should be **DISMISSED**.

### 2.     Kimberly Wood, City of Norfolk

McSheffrey's allegations against Wood, a paralegal, and grand jury coordinator with the City of Norfolk, Compl. ¶ 6, stem from emails Wood exchanged with Wilder surrounding the grand jury meeting on January 6, 2021. McSheffrey's factual contentions with respect to Wood are:

- on December 21 and 29, 2020, Wood emailed Wilder requesting language for McSheffrey's charge and indicating McSheffrey's file was going to the January 6 grand jury, Compl. ¶¶ 23–24, ECF Nos. 143-6, 143-7 (emails);

- on December 29, 2020, Wood emailed Wilder stating, "attached is the Indictment I created for your review and approval. Please look it over and if no corrections need to be made,

---

[3] McSheffrey also alleges that Johnson's failure to train Wilder in how to prosecute cases led to the malicious prosecution of McSheffrey. Compl. ¶ 81 ("By reasons of Defendant Johnson's deliberate actions of failing to train his assistant prosecutors (Wilder) on how to prosecute cases wantonly caused a malicious prosecution and injuries therefrom under the Fourth Amendment."). This conclusory allegation devoid of factual support is insufficient to state a claim for malicious prosecution. *See Iqbal*, 556 U.S. at 678.

click transfer to Court," to which Wilder responded "[t]hank you, done!," Compl. ¶¶ 30–31, ECF No. 143-11 (emails);

- "[o]n December 29, 2020 at or about 10:45 am, Wood called Wilder . . . and advised her that . . . she could prepare the indictment and have it pushed through as if it went to the Grand Jury," Compl. ¶ 28;

- on December 30, 2020, Wood emailed Wilder stating, "[j]ust a heads up, the file is on my desk," to which Wilder responded she would pick it up on Monday, Compl. ¶ 32, ECF No. 143-12 (email string);

- on January 5, 2021, Wood emailed several people including Wilder, requesting case summaries for January 6, 2021, Compl. ¶ 33, ECF No. 143-13 (email); and

- "[o]n January 6, 2021, Defendant Wood was able to have the Direct Indictment signed without having Defendant Davis testify to anything before the Grand Jury," Compl. ¶ 34.

McSheffrey concludes that Wood conspired with Wilder and Davis to make false statements to the grand jury that McSheffrey had forcible intercourse with Jane Doe, who was an adult and was his spouse, "when Jane Doe was a minor (charging [McSheffrey] money, lying about her age and working with police)." Compl. ¶ 61. Alternatively, McSheffrey asserts Wood created, along with Wilder and Davis, a false indictment without grand jury evidence that caused McSheffrey's arrest without probable cause; and "deliberately circumvented the Grand Jury because it was a custom and pattern or practice that she normally took in cases where there was no probable cause to have Plaintiff arrested and taken to trial." *Id.* ¶¶ 60, 62–63.

Wood's alleged actions all took place after the decision to indict McSheffrey had been made. *See* Compl. ¶ 13. Accordingly, the actions took place during the judicial phase of the case, rather than the investigatory phase. *See Malley*, 475 U.S. at 343; *Buckley*, 509 U.S. at 273. Further,

to the extent Wood was able to "prepare the indictment and have it pushed through as if it went to the Grand Jury," Compl. ¶ 28; and "have the Direct Indictment signed without having Defendant Davis testify to anything before the Grand Jury," *id.* ¶ 34, she was performing the functions of a prosecutor in seeking an indictment. Taking a functional approach and "looking to the nature of the function performed and not the identity of the actor who performed it," these actions are entitled to absolute immunity. *Annappareddy*, 996 F.3d at 139. Thus, Wood is entitled to prosecutorial immunity with respect to McSheffrey's suit for damages, and this portion of McSheffrey's third amended complaint should be **DISMISSED**.

**C.      Malicious prosecution in violation of the Fourth Amendment.**

McSheffrey alleges the defendants conspired to procure or create a false indictment against McSheffrey in violation of his Fourth Amendment right "to be seized only upon sanctioned probable cause," and references that he was wrongfully arrested and imprisoned. Compl. ¶¶ 61, 67. As addressed in the ruling on the first motion to dismiss, the first step in analyzing a Fourth Amendment claim is to determine whether the claim is one alleging the analogous common law claims of either false arrest or malicious prosecution. *See* ECF No. 132, at 11. A claim for false arrest is based on a warrantless arrest or imprisonment not supported by probable cause, while a claim for malicious prosecution alleges that an arrest was made pursuant to a warrant that was not supported by probable cause. *Brooks v. City of Winston-Salem*, 85 F.3d 178, 181–83 (4th Cir. 1996). Since McSheffrey bases his argument here on the allegedly false indictment and the ensuing capias resulting in his arrest, his claim sounds in malicious prosecution. *See* ECF Nos. 143-14, at 2; 143-15, at 2.

Malicious prosecution claims under the Fourth Amendment require a plaintiff to "allege that the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by

18

probable cause, and (3) criminal proceedings terminated in plaintiff's favor." *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012). The plaintiff must demonstrate "both but-for and proximate causation." *Id.*

There is no dispute that McSheffrey was arrested, and criminal proceedings terminated in his favor with the entry of a *nolle prosequi* order. *See Bennett v. R & L Carriers Shared Servs., LLC*, 492 F. App'x 315, 333 (4th Cir. 2012) (finding that generally, in Virginia, a *nolle prosequi* order is sufficient evidence that the prosecution has been terminated in the defendant's favor) (citing *Graves v. Scott*, 51 S.E. 821, 823 (Va. 1905)). The issue is whether probable cause existed for his arrest.

### 1. McSheffrey fails to state a claim for malicious prosecution under the Fourth Amendment against defendant Ryan Davis with the Norfolk Police Department.

McSheffrey alleges that, as part of a conspiracy: (1) Davis testified to false information before the grand jury "knowing it was the only way to have [McSheffrey] unlawfully arrest[ed]"; (2) alternatively, Davis maliciously fabricated an indictment against McSheffrey; and (3) Davis falsely responded to interrogatories propounded by McSheffrey in this litigation when he stated that he testified before the grand jury on January 6, 2021, when he did not. Compl. ¶¶ 72–75.

The Court has dismissed McSheffrey's claim against Davis for alleged false testimony before the grand jury on January 6, 2021, as Davis has absolute immunity in his role as a grand jury witness. *See* ECF No. 132, at 8–9 (citing *Rehberg v. Paulk*, 566 U.S. 356, 367 (2012)); *see* Compl. ¶¶ 18, 29, 35, 61, 67, 74. McSheffrey's effort to revive that claim as a part of a conspiracy is without merit.

Similarly, Davis' responses to interrogatories propounded in the current litigation could not have caused McSheffrey's malicious prosecution. *Id.* ¶¶ 34 n.3, 72. McSheffrey asserts Davis

"falsely testif[ied] under oath when responding to interrogatories stating that he believed he testified before the January 6, 2021 Grand Jury when he did not." *Id.* ¶ 72. McSheffrey explains,

> Defendant Davis alleges in answers to Plaintiffs interrogatories that he does remember testifying to the Grand Jury simply because he was there testifying to other cases he investigated. Davis does not recall any facts of testimony he provided because he did not investigate the case. Davis also asserts he does not recall where he received the Case Summary "Grand Jury Sheet" and did not have the Case Summary in his Possession.

*Id.* ¶ 34 n.3. Davis' responses to interrogatories served on March 18, 2022, ECF No. 164-2, could in no way contribute to McSheffrey's arrest without probable cause in January 2021. *See Evans*, 703 F.3d at 647 (requiring a demonstration of "both but-for and proximate causation" to establish malicious prosecution). McSheffrey has thus failed to state a claim for malicious prosecution arising from Davis' responses to interrogatories.[4]

McSheffrey's remaining claim against Davis is for conspiring with Wilder and Wood to fabricate an indictment that caused McSheffrey's arrest without probable cause in violation of the Fourth Amendment.[5] Compl. ¶¶ 73, 75. The factual allegations in the third amended complaint,

---

[4] To the extent McSheffrey alleges a Fourteenth Amendment substantive due process claim that Davis' interrogatory responses in March 2022 were an attempt to cover up the fact that Wood and Wilder fabricated the indictment that led to his arrest, he has failed to state a claim for relief. Compl. ¶ 72. "[T]he Due Process Clause of the Fourteenth Amendment does not provide protection in this area." *Brooks*, 85 F.3d at 184 (citing *Taylor v. Waters*, 81 F.3d 429, 435-36 (4th Cir. 1996). "The Supreme Court has rejected the proposition that a defendant possesses a liberty interest in avoiding prosecution upon less than probable cause . . . [a]nd, the Fourth Amendment provides all of the pretrial process that is constitutionally due to a criminal defendant in order to detain him prior to trial." *Id.* (dismissing for failure to state a claim for relief plaintiff's Fourteenth Amendment claim that an officer's failure to terminate criminal proceedings once plaintiff's innocence was established deprived plaintiff of his constitutional rights); *see also Lambert v. Williams*, 223 F.3d 257, 262 (4th Cir. 2000) (dismissing Fourteenth Amendment claim based on the common law element of malicious prosecution for failure to state a claim for relief).

[5] McSheffrey asserts, "Defendant Davis acting under the color of authority vested in him by the State of Virginia, did jointly and severally, knowingly, intentionally and maliciously fabricate or manufacture or 'Rubber Stamped' indictment against Plaintiff when he agreed to testify falsely in

however, do not support McSheffrey's conclusion that Davis was involved in the fabrication of a false indictment.

McSheffrey asserts Davis told Wilder he would be at the grand jury on January 6, 2021, could present her case, and would state whatever she wanted him to state. *Id.* ¶ 18. McSheffrey further alleges that Davis agreed to help Wilder even if he had to make false statements, but "Wilder explained that he would not have to testify because Defendant Wood was handling pushing the direct indictment through." *Id.* ¶ 29. McSheffrey asserts that, "[o]n January 6, 2021, Defendant Wood was able to have the Direct Indictment signed without having Defendant Davis testify to anything before the Grand Jury." *Id.* ¶ 34.

McSheffrey alleges in conclusory fashion that Davis conspired with Wilder and Wood to create a false indictment that led to McSheffrey's seizure without probable cause. *Id.* ¶¶ 60, 63, 75.[6]  The third amended complaint, however, provides no factual allegations supporting a

_____

his interrogatory which caused a violation to the Fourth Amendment of the United States Constitution to have Plaintiff arrested without probable cause." Compl. ¶ 73.

[6] In paragraphs 60, 63, and 75 of the third amended complaint, McSheffrey alleges the following:

> By reasons of Defendant Woods actions, she acted under the color of authority vested in her by the State of Virginia, did a custom or practice Jointly and severally knowingly, intentionally, wantonly, and maliciously with Defendants Wilder and Davis to create a false indictment and/or "rubber stamped," without Grand Jury hearing evidence, which caused the unreasonable seizure of Plaintiff's person without probable cause in violation of the Fourth Amendment to the United States Constitution, and injuries therefrom. [Compl. ¶ 60].

> Defendant Wood acting under the color of authority vested in her by the State of Virginia, did jointly and severally, knowingly, intentionally, wantonly, maliciously and deliberately circumvented the Grand Jury because it was a custom and pattern or practice that she normally took in cases where there was no probable cause to have Plaintiff arrested and taken to trial, in addition, it was a unlawful conspiracy with Defendants Davis and Wilder to have Plaintiff arrested without probable cause in violation of the 4th Amendment to the United States Constitution. [*Id.* ¶ 63].

conclusion that Davis conspired with Wilder and Wood to fabricate an indictment. "Claims that are . . . mentioned only as speculative, bald accusations, without any supporting factual allegations, will not suffice." *Walton v. Harker*, 33 F.4th 165, 175 (4th Cir. 2022) (citing *Iqbal*, 556 U.S. at 679); *see also Byrd v. McLeod*, No. 5:22-CT-03134-M, 2023 WL 1797906, at *5 (E.D. N.C. Feb. 7, 2023) ("[c]onclusory conspiracy allegations do not establish the 'meeting of the minds' element and thus fail to state a claim").

In addition, to the extent Davis fabricated an indictment, Compl. ¶ 73, Davis was performing the function of a prosecutor. As discussed in the preceding section, in performing this function, Davis is entitled to absolute immunity. *See Jean*, 155 F.3d at 707 (holding law enforcement officers are entitled to the same immunity as prosecutors when they perform identical functions).

Lastly, to the extent Davis offered to assist with, or agreed to, the fabrication of an indictment, the actions of Wood and Wilder in fabricating the indictment superseded the alleged actions of Davis. "[S]ubsequent acts of independent decision-makers (e.g., prosecutors, grand juries, and judges) may constitute intervening superseding causes that break the causal chain between a defendant-officer's misconduct and a plaintiff's unlawful seizure." *See Evans*, 703 F.3d at 647. McSheffrey has not alleged that Wood created the indictment based on false or misleading information provided by Davis. Instead, McSheffrey asserts Wood informed Wilder that Wood could "prepare the indictment and have it pushed through as if it went to the Grand Jury," Wilder

---

By reasons of Defendant Davis actions, acted under the color of authority vested in him by the State of Virginia, worked jointly and severally, and knowingly intentionally and maliciously conspire with Defendants Wilder and Wood to deprive the Plaintiff of his life and liberty by denying him Fourth Amendment right to the United States Constitution. [*Id.* ¶ 75].

agreed to this, and Wood was able to have the direct indictment signed without having Davis testify before the grand jury. Compl. ¶¶ 28, 34. The independent acts by Wood and Wilder break the causal chain between Davis' actions and McSheffrey's arrest.

Accordingly, Davis' motion to dismiss, ECF No. 146, should be **GRANTED**.

    2.    **McSheffrey has stated a claim for malicious prosecution against Lily Wilder with the Norfolk Commonwealth's Attorney's Office.**

McSheffrey asserts that Wilder, a prosecutor with the Commonwealth's Attorney's Office, violated his Fourth Amendment rights by conspiring with and directing Davis to testify falsely before the grand jury to obtain a false indictment and have McSheffrey arrested. Compl. ¶¶ 67, 69. Alternatively, McSheffrey asserts Wilder approved, and conspired with Wood to create, "a bogus indictment" to have McSheffrey arrested. *Id.* ¶¶ 66, 69. McSheffrey asserts Wilder did not investigate the allegations made against him, but that her decision to pursue an indictment "was based on discussions with [McSheffrey's] employer, the fact that [McSheffrey] was evicting Jane Doe's friends from a condo, and/or other gratifying reason[s]." *Id.* ¶ 68.

McSheffrey alleges the following actions by Wilder support his claim of malicious prosecution:

- contacting Jane Doe and Ms. Turner, exchanging email communications with them, and meeting with Ms. Turner in person, Compl. ¶¶ 10–12, 16–17; ECF Nos. 143-3, 143-5 (Wilder emails discussing meetings);

- going over the case evidence with her supervisor, defendant Johnson, who "reluctantly" approved her request to seek a direct indictment of McSheffrey, Compl. ¶ 19, ECF No. 143-5 (emails between Wilder and Johnson);

- communicating by email with defendant Wood, the grand jury coordinator, regarding the language for the charge, Wood's creating a file, and how to transfer documents to the court

for the grand jury meeting on January 6, 2021, Compl ¶¶ 23–24, 27, 30–31; ECF Nos. 143-6, 143-7, 143-10–12 (emails between Wilder and Wood);

- consulting another Commonwealth's Attorney regarding the language for the direct indictment, Compl. ¶¶ 25–27, ECF Nos. 143-8, 143-9 (emails between Wilder and Krista Fulton);

- directing Davis to testify falsely before the grand jury on January 6, 2021, that Jane Doe was McSheffrey's spouse, Jane Doe was an adult, that intercourse was by force or intimidation, and that Davis was the investigating officer, Compl. ¶ 35, ECF No. 143-14 (direct indictment);

    o alternatively, agreeing to Wood getting the direct indictment signed on January 6, 2021, without having Davis testify before the grand jury, Compl. ¶ 34; and

- obtaining an indictment on January 6, 2021, with the heading "Intercourse with Spouse by Force, Threat, etc.," stating,

    The Grand Jury charges that:

    On or between March 17, 2020 and March 31, 2020, in the City of Norfolk, John Patrick McSheffrey feloniously did commit rape by having sexual intercourse with [Jane Doe], when such act was accomplished against the victim's will, by force, threat or intimidation of or against the victim.

    Va. Code § 18.2-61.

Compl. ¶ 36, ECF No. 143-14 (direct indictment).

These allegations state a cause of action for malicious prosecution against Wilder, that Wilder caused McSheffrey's arrest without probable cause. Wilder's argument that subsequent acts of independent decision-makers broke the causal chain is not persuasive. ECF No. 148, at 6 (citing *Smith v. Travelpiece*, 31 F.4th 878, 885 (4th Cir. 2022)). Because a plaintiff must establish but-for and proximate causation to prove malicious prosecution, "subsequent acts of independent

decision-makers (*e.g.,* prosecutors, grand juries, and judges) may constitute intervening superseding causes that break the causal chain between a defendant['s] . . . misconduct and a plaintiff's unlawful seizure." *Evans*, 703 F.3d at 647. Neither the actions of Davis nor Wood as alleged in the third amended complaint can be taken as acts by an independent decision-maker sufficient to break the causal chain between Wilder's actions and McSheffrey's arrest. McSheffrey has alleged that Davis informed Wilder he would "state whatever she wanted him to state" to the grand jury, Wilder directed Davis to testify falsely, and Davis did testify falsely to the grand jury. Compl. ¶¶ 18, 35, 68. Alternatively, McSheffrey alleges Wilder agreed to and approved Wood's preparing an indictment and having it "pushed through as if it went to the Grand Jury." *Id.* ¶¶ 28, 66, 69.

Wilder's argument that the arrest was pursuant to a facially valid warrant is also contradicted by the allegations in the complaint. ECF No. 148, at 5–6. McSheffrey asserts that a capias for his arrest was issued based on a "false" indictment that was obtained by false testimony to the grand jury or fabrication without any testimony to the grand jury. Compl. ¶¶ 34–37.

Lastly, taking the allegations in the complaint as true with all inferences in favor of McSheffrey, Wilder is not entitled to qualified immunity.[7] The doctrine of qualified immunity "shields government officials from liability for civil damages, provided that their conduct does not violate clearly established statutory or constitutional rights within the knowledge of a reasonable person." *Meyers v. Baltimore Cnty.*, 713 F.3d 723, 731 (4th Cir. 2013) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity "balances two important interests— the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties

---

[7] Wilder has not alleged that she is entitled to prosecutorial immunity. *See* ECF No. 148.

reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). As a result, "[q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al–Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley*, 475 U.S. at 341).

For qualified immunity to protect Wilder, she "must demonstrate that (1) [McSheffrey] has not alleged or shown facts that make out a violation of a constitutional right, or that (2) the right at issue was [not] clearly established at the time of its alleged violation." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 395–96 (4th Cir. 2014) (alteration in original) (internal quotation marks omitted). The Fourth Amendment protects McSheffrey from seizure without probable cause, and this right was clearly established in 2020 and 2021 when the actions alleged in the third amended complaint took place. *See Lambert v. Williams*, 223 F.3d 257, 261 (4th Cir. 2000) (discussing Fourth Amendment claims for unreasonable seizure). McSheffrey has alleged that Wilder knowingly procured a direct indictment based on false testimony or through fabrication, which led to McSheffrey's arrest without probable cause. Taking such allegations as true with all inferences drawn in McSheffrey's favor, dismissal of Wilder on grounds of qualified immunity is not appropriate on the pending motion to dismiss.

**D.      McSheffrey fails to state a claim for declaratory relief.**

In addition to monetary damages, McSheffrey seeks:

a declaratory judgment that Defendants Wood, Wilder, Davis, and Johnson conduct as alleged in the above Claims violated Plaintiffs' rights under the Fourth Amendment to the United States Constitution and declare the direct indictment lacked probable cause to arrest and prosecute the Plaintiff.

Compl. ¶ 82.

26

The purpose of the Declaratory Judgment Act is to "allow[ ] the uncertain party to gain relief from the insecurity caused by a potential suit waiting in the wings." *United Capitol Ins. Co. v. Kapiloff,* 155 F.3d 488, 494 (4th Cir. 1998).  When a suit has already been filed, the insecurity of potential litigation does not exist. *Id.* Further, "'declaratory judgments are designed to declare rights so that parties can conform their conduct to avoid future litigation,' and are untimely if the questionable conduct has already occurred or damages have already accrued." *Tapia v. U.S. Bank, N.A.*, 718 F. Supp. 2d 689, 695 (E.D. Va. 2010), *aff'd,* 441 F. App'x 166 (4th Cir. 2011) (quoting *The Hipage Co., Inc. v. Access2Go, Inc.*, 589 F. Supp. 2d 602, 615 (E.D. Va. 2008)).

McSheffrey is seeking a declaration that the past acts of the defendants violated the Constitution.  Such declaratory relief is inappropriate and not available to McSheffrey. *See Koon v. McBee*, No. 2:14cv2663-RBH, 2015 WL 2105904, at *3 (D.S.C. May 6, 2015), *aff'd,* 613 F. App'x 269 (4th Cir. 2015) (finding a request that "the Court declare various past actions of the Defendants to be in violation of the Constitution" to be an improper request for declaratory relief); *Tapia*, 718 F. Supp. 2d at 695–96 (granting motion to dismiss and finding "declaratory action cannot be used to redress alleged past wrongs").  Accordingly, McSheffrey's claim for declaratory judgment should be **DISMISSED**.

## V.    RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that the motions to dismiss the third amended complaint filed by Davis, Johnson, and Wood, ECF Nos. 146, 151, 156, be **GRANTED**, and these defendants be **DISMISSED**.  The undersigned further **RECOMMENDS** that the motion to dismiss the official capacity claim and claim for declaratory relief against Wilder be **GRANTED**, and the remainder of Wilder's motion to dismiss, ECF No. 148, be **DENIED**.

## VI.   REVIEW PROCEDURE

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.      Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date this report is forwarded to the objecting party by Notice of Electronic Filing or mail, *see* 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. Rule 6(d) of the Federal Rules of Civil Procedure permits an extra three (3) days, if service occurs by mail. A party may respond to any other party's objections within fourteen (14) days after being served with a copy thereof. *See* Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

2.      A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

Robert J. Krask
United States Magistrate Judge

Norfolk, Virginia
November 16, 2023

## <u>Clerk's Mailing Certificate</u>

A copy of the foregoing was provided electronically to counsel for defendants and was mailed this date to:

John P. McSheffrey
319 E. Leicester Avenue
Norfolk, VA 23503

Fernando Galindo, Clerk

By__E. Price_____
          Deputy Clerk

November 16, 2023

29